UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BARBARA CLARK, | : | Case No. 3:11-cv-337 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. 6-20) (ALJ's decision)).

**I.**

Plaintiff last worked on February 1, 2000, when she was injured after lifting a patient and twisting her back. (Tr. 167, 379). She previously applied for DIB, but that application was denied at the hearing level by an ALJ on November 23, 2004. (Tr. 9, 48-63, 140, 163). The ALJ found that Plaintiff retained the ability to perform a reduced range of light work. (Tr. 9). The United States District Court for the Southern District of Ohio upheld the denial in August 2008. (Tr. 142, 145).

Plaintiff filed another claim for a period of disability and DIB on June 11, 2007,

alleging a disability onset date of November 14, 2004, due to back problems resulting from damaged disks, and a rotator cuff injury which caused pain in her left arm and headaches. (Tr. 135). Her insurance status expired on December 31, 2005. (Tr. 138). Plaintiff's complaint was denied initially (Tr. 64, 68-74), and upon reconsideration (Tr. 65, 77-83). Plaintiff requested a hearing, which was held via video conference on April 29, 2010 before an ALJ. (Tr. 21-44). Plaintiff testified at the hearing about her injuries, daily activities, and mental health during the time between the alleged onset of her disability and when her insurance expired.[1] (Tr. 24-38). Also present were Plaintiff's attorney, and a vocational expert, who also testified regarding Plaintiff's disability. (Tr. 21).

In a July 6, 2010 decision, the ALJ found that Plaintiff was not disabled because she could perform a reduced range of sedentary work.[2] (Tr. 6-20). The Appeals Council

---

[1] To qualify for DIB, a claimant must meet certain insured status requirements. In particular, to be considered insured in a given month for the purposes of DIB, an individual must generally have "not less than 20 quarters of coverage during the 40-quarter period which ends with the quarter in which such month occurred." 40 U.S.C. § 423(c)(1)(B)(I). "If a claimant is no longer insured for disability insurance benefits at the time she files her application, she is entitled to disability insurance benefits only if she was disabled before the date she was last insured." *Renfro v. Barnhart*, 30 Fed. Appx. 431, 435 (6th Cir. 2002). Consequently, to be relevant to the disability decision, evidence related to the date after a claimant was last insured "must relate back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F. Appx. 478, 480 (6th Cir. 2003).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary to carry out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

denied review of the ALJ's decision. (Tr. 1-3). Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

Plaintiff was forty-seven years old, which qualifies her as a younger individual at the time her insurance status expired on December 31, 2005.[3] (Tr. 129). Plaintiff's past relevant work ("PRW") consisted of work as a certified nursing assistant. (Tr. 24).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2005.

2. The Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of November 24, 2004 through her date last insured of December 31, 2005 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, status post-surgery, peripheral neuropathy, venous insufficiency in the lower extremities, left shoulder rotator cuff impingement, status post surgery, left knee tear, obesity, depression, and anxiety (20 CFR 404.1520(c)).

4. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could never climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. The Plaintiff

---

[3] Social Security Administration Regulations note that "the term younger individual is used to denote an individual age 18 through 49." 20 C.F.R. § 404.201.00(h)(1).

could only occasionally use her lower extremities to push and/or pull. She was limited to frequent overhead reaching with her left upper extremity. She needed to avoid concentrated exposure to work hazards. Her mental impairments limited her to simple repetitive 4-step tasks with only occasional contact with the public, coworkers, and supervisors.

6. Through the date last insured, Plaintiff was unable to perform any past relevant work (20 CFR 404.1565).

7. Plaintiff was born on July 9, 1958 and was 47 years old, which is defined as a younger individual ages 45-49, on the date last insured (20 CFR 404.1563).

8. Plaintiff has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to determining disability because using the Medical-Vocational rules as a framework supports a finding that the Plaintiff is "not disabled," whether or not the Plaintiff has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The Plaintiff was not under a disability, as defined in the Social Security Act, at any time from November 24, 2004, the alleged onset date, and December 31, 2005, the date last insured (20 CFR 404.1520(g)).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB. (Tr. 6).

On appeal, Plaintiff argues that: (1) the ALJ erred in rejecting the opinions of Plaintiff's treating psychiatrist and physician; and (2) the ALJ erred in finding Plaintiff not disabled when no contradicting medical opinion existed in the record. The Court will address each argument in turn.

**II.**

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

**Medical History**[4]

Dr. Amongero saw Plaintiff in December 2004 for back pain, and an MRI showed "moderate degree of degenerative disk disease at L3-4."[5] (Tr. 450). Plaintiff's lumbar range of motion was significantly reduced. (Tr. 450). Dr. Amongero saw Plaintiff again on January 27, 2005. An EMG was negative for lumbar radiculopathy, but it showed significant polyneuropathy[6] and a discogram was positive at L3-4.[7]

Plaintiff went to the emergency room on March 4, 2005, after falling and injuring both knees.[8] (Tr. 476, 478). Although Plaintiff had a previous anterior cervical discectomy and fusion in 2003, she experienced increasing pain and radiating numbness with activity. (Tr. 262, 496). On March 7, 2005, Plaintiff underwent back surgery again, specifically, an "L3-4 discectomy with posterior interbody fusion."[9] (Tr. 261, 265-266,

---

[4] This history focuses on the relevant period for this claim from November 24, 2004 (the alleged onset date) through December 31, 2005 (Plaintiff's date last insured).

[5] Degenerative disk disease occurs when disks in the spine, which act as cushions between the bones of the spine, wear out or are otherwise injured. L3 and L4 refers to the lower part of the back, also called the lumbar area.

[6] Neuropathy occurs when nerves stop functioning properly, causing numbness and pain. Polyneuropathy refers to neuropathy that affects multiple nerves.

[7] Radiculopathy occurs when one or multiple nerves in the spine are compressed, causing back pain. A discogram is a procedure used to locate and measure back pain.

[8] The cervical section of the spine is located at the top of the spine in the neck.

[9] Plaintiff underwent a spinal fusion procedure in which two or more vertebrae were fused together by removing the herniated disks in between and using a bone graft to connect the verterbrae, thus preventing the bones from moving against each other.

495, 499-500). Dr. Amongero saw Plaintiff on March 22, 2005, in a follow up to her fusion. Plaintiff reported that she was doing well, but that she had fallen and injured her left knee. (Tr. 445). Six weeks after the procedure, Plaintiff reported that her back pain was "markedly improved." (Tr. 440). In May 2005, Dr. Amongero reported that Plaintiff was "overall doing well," and instructed her to discontinue use of her back brace and resume normal activities. (Tr. 440).

Dr. Paul Nitz, an orthopedist, saw Plaintiff on May 9, 2005. X-rays showed patella-femoral joint space narrowing, and a May 16, 2005, MRI demonstrated a "complex tear of the medial meniscus," for which Dr. Nitz recommended surgery. (Tr. 441). Plaintiff underwent arthroscopic surgery on her left knee on June 11, 2005. (Tr. 439, 550-554). In July, 2005, Dr. Nitz observed that Plaintiff had "made [a] good recovery in terms of her range of motion and comfort with the left knee." (Tr. 438).

In August 2005, Dr. Amongero noted that an EMG showed significant polyneuropathy and he referred her to Dr. Vandersluis. (Tr. 437). Dr. Joel Vandersluis, a neurologist, saw Plaintiff on September 14, 2005 for complaints of foot numbness that had progressed over the years, gait instability, and poor balance. (Tr. 426). On exam, Plaintiff showed diminished reflexes and sensation, and an abnormal gait. (Tr. 527). A September 27, 2005 EMG demonstrated "[s]ensory motor peripheral polyneuropathy with evidence of chronic as well as subacute distal denervation."[10] (Tr. 424). On November

---

[10] Subacute distal denervation is the interruption of a nerve connection to one of the extremities, with subacute referring to a severity level between acute and chronic on the spectrum.

22, 2005, Plaintiff complained of cramping and parethesias in her legs and intermittent unstable gait. An EMG revealed severe sensory motor peripheral polyneuropathy with possible radiculopathy. (Tr. 317-318, 420). On December 14, 2005, Dr. Vandersluis examined Plaintiff for complaints of pain in her shoulders and wrists. Dr. Vandersluis diagnosed polyneuropathy, lumbosacral degenerative disease, status post fusion, and inflammation, perhaps due to rheumatoid arthritis. (Tr. 419).

Dr. Sayyah Aljouni, a cardiologist, completed a questionnaire for the Bureau of Disability Determination ("BDD") on August 2, 2007. (Tr. 279). Dr. Aljouni treated Plaintiff for low back pain, multiple sites of aching pain, anxiety, insomnia, headaches, chest pain, osethoarthritis, and bilateral leg numbness. (Tr. 280-304). Notes dated February 25, 2005, describe Plaintiff as "very emotional," anxious, and withdrawn, and state that she complained of numbness in both legs. (Tr. 285-286). On May 19, 2005, Plaintiff complained of pain in both knees. (Tr. 290). Plaintiff had bilateral edema of her lower extremities on exam in May, July, and September of 2005.[11] (Tr. 292-293, 298). Plaintiff again complained of numbness in both legs on September 15, 2005. (Tr. 297).

On March 8, 2010, Dr. Vandersluis stated that he treated Plaintiff for progressive neuropathy, as shown by EMG, from September 2005 through December 2009. Dr. Vandersluis stated that Plaintiff had progressive weakness in her legs and hands, a marked loss of sensation from her knees down, and that she walked with a cane. He

---

[11] Edema is swelling, usually in the arms, legs, hands, and feet, due to extra fluid trapped in the body's tissue. Edema may also be known as "dropsy."

prescribed an ankle-foot orthotic splint for stability. Dr. Vandersluis also noted that since 2001, Plaintiff sought different treatment for her neuropathy that did not help, including injections, placement of a spinal cord stimulator, and multiple medications. Dr. Vandersluis opined on March 8, 2010 that Plaintiff was totally disabled from even sedentary work activity. (Tr. 933). On April 2, 2010, Dr. Vandersluis did not know of anything else that could be done for Plaintiff's spine problems. (Tr. 898).

**Mental Health History**

From May 29, 2002 to February 21, 2005, Dr. Dong S. Moon, a psychiatrist, treated Plaintiff for panic disorder with agoraphobia[12] and a depressive disorder. From January 22, 2004 through February 2004, Dr. Moon observed Plaintiff to be nervous, anxious, depressed, sad, and tense. (Tr. 534-539). Throughout 2004 and 2005, Dr. Moon and Audrey Berlin, MS, LPC, noted that Plaintiff's symptoms varied: at times she struggled with anxiety and depression, but at other times she was improving or progressing. (Tr. 504-539). Plaintiff most frequently reported that she was "maintaining." (Tr. 504, 506, 513, 517-518, 523, 525-528, 530, 532-534, 539).

Dr. Moon's notes from 2004 indicate both that Plaintiff struggled with her depression and anxiety, but that she seemed to have some improvement. In May, 2004, Dr. Moon completed a form for the Bureau of Workers' Compensation ("BWC"),

---

[12] Agoraphobia is a defined as a panic disorder that causes severe anxiety when the sufferer is in certain environments that trigger intense fear and anxiety, such as a wide-open space, crowds, or places without an escape. The anxiety can result in panic attacks, and at the extreme, may prevent sufferers from being able to leave home for fear of a panic attack.

reporting that Plaintiff was not a candidate for vocational rehabilitation as her condition had not stabilized. (Tr. 522). On June 30, 2004, Dr. Moon appealed the BWC's decision to reduce Plaintiff's treatment, arguing that she needed weekly individual psychotherapy, "due to her high level of anxiety and panic attacks," despite an improvement in her depression. (Tr. 540). On June 11, 2004, Dr. Moon indicated that Plaintiff was making "slow but steady progress," but her condition was "fluctua[ting] due to stressful factors." (Tr. 547).

Plaintiff saw Dr. Moon once or twice a month from June to December of 2004 and reported that she continued to have panic attacks, had a high level of anxiety and irritability, and lacked energy and motivation. Dr. Moon noted that the limitations caused by the combination of Plaintiff's physical and mental impairments were greater than the sum of the parts. (Tr. 757). Dr. Moon further noted that, "people who suffer from depression have a harder time coping with pain." (Tr. 758). Dr. Moon opined in interrogatories that Plaintiff had a number of work-related limitations, including marked limitations in her daily activities and social functioning and marked deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner. (Tr. 761-762). She had poor to no ability to deal with the public; deal with work stresses; maintain attention/concentration; understand, remember, and carry out complex and detailed job instructions; behave in an emotionally stable manner; and relate predictably in social situations. (Tr. 763-765). Dr. Moon noted that "when her pain

levels increased, following simple instructions might even be difficult for her. . . . High levels of anxiety would aggravate her concentration and attention to her work" (Tr. 764). Further, Dr. Moon opined that Plaintiff's "depression with lack of energy and motivation would prevent her from being reliable to attend work." (Tr. 764).

**B.**

First, Plaintiff claims that the ALJ erred in rejecting the opinions of two of her treating doctors, psychiatrist Dr. Moon and neurologist Dr. Vandersluis. Plaintiff argues that the ALJ erred in not giving these treating physicians complete deference.

The record reflects that the ALJ properly applied the five-step sequential evaluation in determining that Plaintiff was still able to perform sedentary work. (Tr. 11-20). The ALJ found that "the claimant was not under a disability within the meaning of the Social Security Act from November 24, 2004, through the date last insured." (Tr. 9). The ALJ examined the opinions of the treating physicians during this time period, concluding that the "residual functional capacity assessment is supported by the objective medical evidence, the claimant's daily activities, and her response to treatment." (Tr. 19). The date last insured is significant because Plaintiff is entitled to disability benefits only if she was "insured for a disability, as defined in 20 C.F.R. § 404.130 in the calendar quarter in which [she] became disabled, or in a later calendar quarter in which [she was] disabled." 20 C.F.R. § 404.320(b)(2). Thus, Plaintiff bore the burden of showing that she was disabled before her insurance expired on December 31, 2005.

Plaintiff's argument relies on the so-called "treating physician rule," which "requires the ALJ to *generally* give greater deference to the opinions of treating physicians rather than the opinions of non-treating physicians." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (emphasis supplied). Social Security Administration Regulations require that an ALJ give the opinion of a treating physician deferential weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004), *citing* 20 C.F.R. § 404.1527(d)(2). A physician's opinion requires evidentiary support. *Id*.

In this case, Plaintiff's reliance on the "treating physician rule" is misplaced. The ALJ did not defer to a non-treating physician's opinion, but appropriately found that two of Plaintiff's treating physicians were entitled to little or no weight when considering the entire record as a whole. "In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1520(b). The ALJ properly considered the treating physicians' opinions in light of their examination notes and treatment during the relevant period, the timing and frequency of the examinations, and whether that evidence was consistent with and in support of the physicians' opinions. *Wilson*, 378 F.3d at 544.

Plaintiff also asserts that the ALJ did not provide the requisite reasoning to support her determination.  If a treating physician's opinion is not given controlling weight, then the "ALJ must apply certain factors - namely, the length of treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544 (*citing* 20 C.F.R. § 404.1527(d)(2)).

The record shows that the ALJ provided adequate reasoning for her decision.  Specifically, the ALJ found that the medical evidence from the period before Plaintiff's insurance expired did not support Dr. Vandersluis' determination that Plaintiff was "totally disabled with regard to part-time or full-time work."  (Tr. 900).  The determination of whether or not a claimant is disabled is a matter reserved to the Commissioner, and a treating physician's description of a claimant as "disabled" is not sufficient evidence of that claimant's status.  20 C.F.R. § 404.1527(b) and 404.1527(d)(1).  *See also King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (A conclusory statement by a treating physician is not alone sufficient to accord deferential weight).

The ALJ considered Dr. Vandersluis' opinion in light of his treatment relationship with the Plaintiff, including the length of the treatment relationship, frequency of the examinations, and the notes from his examinations.  Dr. Vandersluis' treatment of

Plaintiff consisted of only three examinations over three months during the relevant period before Plaintiff's insurance expired. (Tr. 419, 420, 426-427). During these examinations, Dr. Vandersluis diagnosed Plaintiff with polyneuropathy, but never indicated work limitations or restrictions and never described Plaintiff as disabled. (Tr. 419, 420, 426-427). After reviewing Dr. Vandersluis' response to a request for a narrative summary and opinion from March 2010, the ALJ determined that the answers therein did not match the evidence from the 2005 treatment records. Accordingly, the ALJ found Dr. Vandersluis' opinion inconsistent with the medical evidence, and gave "little weight to [his] opinion, noting that it is not supported by the medical records for the period at issue." (Tr. 19). The ALJ also indicated that the brief duration of the treatment relationship during the relevant time period lessened the weight given to the opinion. (Tr. 16).

For similar reasons, the ALJ also rejected the opinion of Plaintiff's psychiatrist, Dr. Moon. First, Dr. Moon did not treat Plaintiff throughout the relevant period. Dr. Moon first began seeing Plaintiff in May 2002, and continued to treat her until February 2005. (Tr. 756). Plaintiff chose to discontinue treatment with Dr. Moon in February 2005, thus his opinion is not based on Plaintiff's behavior during much of the relevant period. (Tr. 37). While Plaintiff stated that she chose to discontinue treatment due to the cost, notes from Dr. Moon's office indicate that Plaintiff stopped treatment because of her back surgery. (Tr. 37, 504). The ALJ properly considered the length and extent of the

-14-

treatment relationship in determining how much weight to accord Dr. Moon's opinion. *Wilson*, 378 F.3d at 544.

Additionally, Dr. Moon's opinion is not supported by the treatment notes during the relevant time frame. Internal inconsistency is acceptable grounds for an ALJ to give less or no weight to a physician's opinion when "other substantial evidence in the administrative record supports the conclusion reached by the administrative law judge." *Ledford v. Astrue*, 311 Fed. Appx. 746, 754 (6th Cir. 2008). In particular, Dr. Moon's notes most frequently describe Plaintiff as "maintaining" her condition. (Tr. 16). In response to interrogatories completed by Dr. Moon on March 16, 2009, the ALJ accorded "no weight to Dr. Moon's questionnaires. The doctor himself indicated that the claimant was maintaining a baseline emotional state during the time he treated her. Additionally, the claimant testified that she discontinued mental health treatment with Dr. Moon." (Tr. 17). Therefore, the ALJ could reasonably find that Plaintiff's ability to maintain her emotional state throughout treatment was inconsistent with Dr. Moon's characterization of her mental limitations and a proper reason for discounting his opinion. Accordingly, the ALJ's decision is supported by substantial evidence.

## C.

Second, Plaintiff claims that the ALJ erred in finding her not disabled when the record contains no contradicting evidence. While an ALJ generally must defer to the opinion of a treating physician, she "is not bound by conclusory statements of doctors,

particularly where they are unsupported by detailed objective criteria and documentation." *Cohen v. Sec'y of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). The ALJ properly considered the entire record to determine the supportability of the treating physician's opinions, as "the determination of disability must be made on the basis of the entire record, and not only some of the evidence." *Hardaway v. Sec'y of Health & Human Services*, 823 F.2d 922, 927 (6th Cir. 1987).

The record does not contain any opinions from non-treating physicians regarding Plaintiff's status as disabled or not disabled; however, it does contain treatment notes from some of Plaintiff's other treating physicians and information about Plaintiff's daily activities during the relevant time period. The ALJ "will always consider the medical opinions in your case record together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(b). The relevant evidence may include the extent of the daily activities of the Plaintiff. *Cohen*, 964 F2d at 529. The ALJ properly considered Plaintiff's own statements about her ability to do limited amounts of housework, play Bingo, visit her grandchildren, and move about during the time period in question. (Tr. 12). The ALJ found that such evidence, based on Plaintiff's own statements, "demonstrates only mild restrictions in activities of daily living." (Tr. 12).

Dr. Moon and Dr. Vandersluis are only two of several physicians that treated Plaintiff during the relevant time period of November 24, 2004 - December 31, 2005.

The treatment notes and medical evidence from the examinations do not support the opinions of Dr. Moon and Dr. Vandersluis. In December 2004, Dr. Amongero treated Plaintiff for back pain, for which an MRI showed a "moderate degree of degenerative disk disease at L3-4." (Tr. 450). In August 2005, Dr. Amongero noted that Plaintiff's back seemed to be doing well after surgery, although an EMG revealed significant polyneuropathy. (Tr. 437). Dr. Aljouni also treated Plaintiff from February through September 2005 for low back pain, leg pain, leg numbness, and other ailments. (Tr. 280-304). Dr. Nitz saw Plaintiff for a knee injury in May 2005, and she underwent knee surgery to repair a torn meniscus. (Tr. 442). None of these physicians describes Plaintiff as disabled, incapacitated, or unable to perform even sedentary work.

The issue is not whether the record could support a finding of disability, but whether the ALJ's decision is supported by substantial evidence. *Casey v. Sec'y of Health & Human Services*, 978 F.2d 1230, 1233 (6th Cir. 1993). Substantial evidence supports the ALJ's finding that Plaintiff was not disabled.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Barbara Clark was not entitled to a period of disability or disability insurance benefits, is found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no

further matters remain pending for the Court's review, this case is **CLOSED.**

Date:   8/7/12                                          *s/ Timothy S. Black*
                                                        Timothy S. Black
                                                        United States District Judge